<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL V., | Civil Action No. 24-08529 (SDW) |
| Plaintiff, | |
| | **OPINION** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | August 7, 2025 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Michael V.'s[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Ricardy Damille's ("ALJ Damille") denial of Plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (D.E. 1.) This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 42 U.S.C. § 405(g). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Standing Order 2021-10, issued on October 1, 2021, available at https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

1

**PROCEDURAL AND FACTUAL HISTORY**

    A.  **Procedural History**

On May 7, 2021, Plaintiff filed a Title II application for DIB (D.E. 5 (Administrative Record ("R.")) at 173), alleging disability beginning on January 1, 2020 ("onset date"), due to a variety of physical impairments including arthritis, neuropathy, nerve damage, atrial fibrillation, and obesity (R. 16).  The Social Security Administration ("SSA") denied Plaintiff's application initially on October 21, 2021, and upon reconsideration on February 3, 2022. (R. 14, 60, 69.) ALJ Damille held an administrative hearing via telephone on November 1, 2022 (R. 41–59), and July 18, 2023 (R. 31–40).  On September 8, 2023, he issued a written decision denying Plaintiff's applications and found that Plaintiff was not disabled from the onset date to the date of last insured. (R. 14–22.)  Plaintiff requested review of the ALJ's decision (R. 171–72), and on June 25, 2024, the Appeals Council affirmed the ALJ's decision (R. 1–6).  *See* 20 C.F.R. § 404.979.  Plaintiff appealed to this Court; the parties completed timely briefing.  (D.E. 8; D.E. 10; D.E. 11.)

    B.  **Factual History**

Plaintiff was born on September 8, 1959 and has a high school education.  (R. 46, 61.) After graduating high school, Plaintiff received specialized training in the Navy and, following his discharge, attended trade school to become an electrician.  (R. 672.)  He initially worked as an electrician for the SSA before being trained to work as a claims representative.  (*Id.*)  Plaintiff's past relevant work as a claims processor is sedentary, semiskilled work with a specific vocational preparation of four.  (R. 21.)  Plaintiff has not performed substantial gainful activity ("SGA") since his alleged onset date, and he testified that the payments he received following his alleged onset date were from previous work that concluded in December 2019.  (R. 47.)

1. **Medical Record**

On January 13, 2020, Plaintiff visited Deogenes Deleon, M.D., complaining of trouble sleeping. (R. 398.) Dr. Deleon diagnosed Plaintiff with obstructive sleep apnea and referred Plaintiff for a sleep study. (R. 402.) At a follow-up appointment two months later, Dr. Deleon noted that Plaintiff's sleep study revealed severe sleep apnea and prescribed a CPAP machine. (R. 424.) Plaintiff told Dr. Deleon that he felt better during an appointment on June 11, 2020, and Dr. Deleon was satisfied that the CPAP machine successfully controlled Plaintiff's apnea. (R. 442–43.)

In March 2020, Plaintiff underwent an EMG and nerve conduction study, which both yielded normal results. (R. 1121–23, 1118.) He met with John S. Juliano, M.D., on March 17, 2020. (1118–20.) Plaintiff described pain in both of his wrists and knees. (*Id.*) Dr. Juliano explained that although the EMG ruled out carpal tunnel syndrome, Plaintiff's pain could be due to arthritis.[2] (*Id.*) Plaintiff later met with Jason Wu, D.O., for a follow-up appointment on June 11, 2020. (R. 790.) Plaintiff emphasized his diffuse joint pain and exhibited some restriction without tenderness in his shoulders, and tenderness in his elbows, hands, wrists, and knees. (R. 793.) Plaintiff tested "borderline positive" for rheumatoid factor, which Dr. Wu noted was "likely insignificant." (R. 794.) Dr. Wu diagnosed Plaintiff with generalized osteoarthritis. (R. 793.)

In June 2020, Plaintiff met with Hratch Kazanjian, M.D. for a cardiology appointment. (R. 541.) Dr. Kazanjian noted that Plaintiff was morbidly obese but recorded otherwise unremarkable

---

[2] Plaintiff visited Dr. Juliano to follow up about his osteoarthritis and sometimes receive knee injections on June 16, 2020 (R. 1115–17), November 5, 2020 (R. 1111–14), December 7, 2020 (R. 1107–10), December 30, 2020 (R. 1104–06), February 18, 2021 (R. 1092–94), February 25, 2021 (R. 1746–49), April 19, 2021 (R. 1085–87), July 2, 2021 (R. 1082–84), July 9, 2021 (1079–81), November 2, 2021 (R. 688–690), February 15, 2022 (R. 1070–72), February 18, 2022 (R. 1067–69), February 25, 2022 (R. 1064–66), May 2, 2022 (R. 1061–63), August 16, 2022 (1058–61), September 19, 2022 (R. 1053–57), September 26, 2022 (R. 1050–52), October 3, 2022 (R. 1705–07), December 15, 2022 (R. 1702–04), January 16, 2023 (R. 1699–1701), May 9, 2023 (R. 1696–98), May 16, 2023 (R. 1693–95), and May 23, 2023 (R. 1690–92).

physical and mental status findings. (R. 543.) He recommended that Plaintiff lose weight and limit fluid intake in the evening. (*Id.*) Plaintiff's cardiac condition was stable at a follow-up in October 2020, and Dr. Kazanjian again recorded unremarkable physical and mental status findings. (R. 538.) Plaintiff's echocardiogram from October 2020 showed a severely dilated left atrium but was otherwise normal. (R. 560–65.) Plaintiff's physical and mental status remained unremarkable at an April 2021 follow-up, and again in May and December 2022. (R. 524, 1030–46, 1609–13.) Dr. Kazanjian later noted that Plaintiff was not taking his blood thinners as prescribed, but otherwise made no new findings in an April 2023 follow-up. (R. 1604–08.)

Plaintiff visited Jason Green, M.D. on December 8, 2020 and reported abdominal pain. (R. 457.) Dr. Green ordered a colonoscopy and noted that Plaintiff did not report any gastrointestinal symptoms beyond pain and gas. (R. 458.) Plaintiff's colonoscopy revealed numerous small and large-mouthed diverticula in the sigmoid and descending colon. (R. 467–70.) Plaintiff complained of similar gastrointestinal symptoms at an appointment over a year later, in February 2022, and Dr. Green ordered a CT scan. (R. 1582–83.) The CT scan showed an intra-abdominal wall hernia containing a small bowel loop without obstruction, a left kidney stone, and fatty liver. (R. 697.)

On January 14, 2021, Plaintiff met with Lisa Choi, M.D., to discuss a mass that Plaintiff discovered on his right forearm. (R. 1099–1103.) Plaintiff elected that Dr. Choi remove the mass in February 2021, and a biopsy confirmed that it was a benign fibroma. (R. 499.)

On April 13, 2021, Plaintiff met with James Matteson, M.D., to investigate blood in Plaintiff's urine. (R. 529.) A cystoscopy yielded negative results, but a CT scan later that month showed a left ureteral stone. (R. 1208, 1224.) Dr. Matteson reported that Plaintiff was doing well during a May 2021 follow up. (R. 1208–13.)

Marc Friedman, Ph.D., conducted a medical consultative exam of Plaintiff on September 24, 2021 at the Commissioner's request. (R. 672–74.) Dr. Friedman noted that Plaintiff described racing thoughts while trying to fall asleep and demonstrated symptoms consistent with generalized anxiety disorder. (*Id.*) Dr. Friedman recorded that Plaintiff appeared to be otherwise normal: Plaintiff exhibited no difficulty in recalling his short- and long-term memory, easily sustained conversation, appeared to be of sound judgment and impulse, and was able to follow multi-step directions without difficulty concentrating. (*Id.*) Shortly thereafter, Alexander Hoffman, M.D., performed a consultative evaluation of Plaintiff, also at the Commissioner's request. (R. 677–84). Dr. Hoffman noted Plaintiff's extensive medical and surgical history. (*Id.*) Dr. Hoffman also observed that Plaintiff had no difficulty walking and climbing onto the examination table. (*Id.*) Plaintiff also exhibited full range of motion at the wrist and elbow, slightly diminished range of motion in the shoulder, and healthy grip, bicep, and tricep strength. (*Id.*)

In addition, Plaintiff periodically met with William Marion, M.D., who repeatedly refilled Plaintiff's Xanax prescription. (R. 789, 656, 655, 655, 757). There is no evidence that Plaintiff otherwise sought mental health treatment.

   **2. Administrative Hearing**

Plaintiff was represented by counsel at the administrative hearings on November 1, 2022, where Plaintiff testified, and on July 18, 2023, where Plaintiff and an impartial vocational expert, Rocco Meola, testified. (*See generally* R. 31–59.)

Plaintiff testified as to how his background and alleged physical and mental impairments affect his daily living, as well as what he believed stops him from being able to work. Plaintiff stated that he left his job as his medical conditions increased in both number and severity. (R. 47–48.) He described trouble typing, standing up, opening jars, and carrying groceries. (R. 48–52.)

Plaintiff mentioned fecal incontinence episodes, which he suspected were related to his diverticulitis, and increased urinary frequency resulting from his diabetes and prostate issues. (R. 55). He also reported that his CPAP helped him with his sleep apnea, but that his anxiety made it difficult for him to fall asleep. (R. 56–57.) Plaintiff additionally testified that he could make trips to the grocery store, clean his home, prepare his own meals, and practice basic hygiene. (R. 53, 58–59.)

At the July 2023 hearing, Mr. Meola opined that an individual who needs to be within fifteen steps of a bathroom would require an accommodation, but would otherwise be able to work. (R. 37–38.) Mr. Meola ultimately concluded that given his medical history, Plaintiff's past work as a claims processor could still be generally performed. (R. 22, 302–05.)

## LEGAL STANDARD

### A. Standard of Review

When reviewing decisions on applications for Social Security disability benefits, this Court exercises plenary review of legal issues decided by the ALJ and upholds factual findings if supported by substantial evidence. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024); 42 U.S.C. §§ 1383(c)(3), 405(g) ("The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Under the substantial evidence standard, the threshold for evidentiary sufficiency is not high. *Id.* An ALJ's decision cannot be set aside merely because this Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986). So long as the ALJ's decision sufficiently develops the record and explains its

findings to permit meaningful review, the ALJ need not "use particular language or adhere to a particular format" when conducting the analysis. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

### B. The Five-Step Disability Test

To make a disability determination, the ALJ follows a five-step, sequential analysis. 20 C.F.R. § 404.1520(a); *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–03 (3d Cir. 2019). The ALJ determines whether the claimant: first, is currently engaged in SGA; second, has a "severe" and "medically determinable" impairment; and third, has an impairment, or combination thereof, that is equal to or exceeds one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Appendix"). 20 C.F.R. § 404.1520(a)(4)(i)–(iii). Before reaching the fourth step, the ALJ considers the claimant's residual functional capacity ("RFC"), which is "the most [the claimant] can still do despite [his or her] limitations," as it relates to meeting "the physical, mental, sensory, and other requirements of work." *Id.* §§ 404.1520(a)(4)(iv), 404.1545(a). Then, at step four, the ALJ determines whether the claimant can still do his or her past relevant work[3] by comparing his or her RFC to the "physical and mental demands" of that work. *Id.* § 404.1520(a)(4)(iv), (f). Lastly, at step five, the ALJ decides whether the claimant "can make an adjustment to other work" considering his or her RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). The claimant bears the burden of proof at all steps except step five, where the burden is on the Commissioner. *Hess*, 931 F.3d at 201.

---

[3] Past relevant work is work performed by the claimant "within the past five years that was substantial gainful activity and that lasted long enough" for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1)(i).

**DISCUSSION**

    **A. The ALJ's Decision**

On September 8, 2023, ALJ Damille issued a decision concluding Plaintiff is not disabled under sections 216(i) and 223(d) of the Act.[4] (R. 22.) At step one, ALJ Damille found that Plaintiff had not engaged in SGA since January 1, 2020. (R. 16.) At step two, the ALJ concluded that the following impairments were severe and significantly limited Plaintiff's ability to perform basic activities: arthritis in the knees; neuropathy in the hands, feet, and legs; nerve damage in the right hand; atrial fibrillation; and obesity. (*Id.*) ALJ Damille determined the evidence did not establish severe impairments involving sleep apnea, hypertension, diabetes, diverticulitis, hernia, hearing loss, urinary incontinence, and anxiety. (R. 17.) Instead, ALJ Damille found that Plaintiff has "no more than minimal vocational relevant limitations." (*Id.*) In finding Plaintiff's anxiety nonsevere, ALJ Damille considered Plaintiff's ability to perform each of the four "paragraph B" criteria, including: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). Plaintiff described difficulty remembering and completing tasks, but also reported that he "cooks, cleans, cares for his personal hygiene independently, spends time with his family, handles finances independently, and shops in stores." (R. 17.) ALJ Damille was persuaded by the State agency psychological consultants' determination that Plaintiff has "no more than a mild limitation in any functional area." (*Id.*) ALJ Damille ultimately concluded that Plaintiff's anxiety has no more than a minimal impact on Plaintiff's ability to perform basic work activities and causes no more than "mild"

---

[4] Sections 216(i) and 223(d) provide, in identical relevant part: "[T]he term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 416(i)(1), 423(d)(1). Section 223(d) specifies that in addition, an individual may only be considered "disabled" if she is no longer able to perform her previous work or otherwise engage in any SGA available in the national economy. *See id.* § 423(d)(2)(A).

8

limitation in any functional areas, and therefore is not "severe" pursuant to 20 C.F.R. § 404.1520a(d)(1). (R. 18.)

At step three, ALJ Damille concluded that none of the severe impairments identified at step two, individually and in combination, met or medically equalled the severity of those listed in the Appendix. (*Id.*) Although the medical record documents Plaintiff's complaints of knee pain and associated abnormal imaging, ALJ Damille noted that there was no evidence that Plaintiff's arthritis in the knees prevented him from performing fine or gross movements in his bilateral upper extremities. (*Id.*) In addition, ALJ Damille explained that Plaintiff's atrial fibrillation was not "listing-level severity" because it had not resulted in "uncontrolled, recurrent episodes of cardiac syncope or near syncope[.]" (*Id.*) Furthermore, the record did not indicate that Plaintiff's peripheral neuropathy limited his ability to stand, balance, or walk, or hindered his "understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing [him]self." (*Id.*) While ALJ Damille acknowledged that the functional limitations caused by obesity may, "alone or in combination with another impairment," medically equal a listing, he concluded that Plaintiff's obesity did not combine with any of Plaintiff's other severe impairments to meet or medically equal a listing. (R. 19.)

As to Plaintiff's RFC, ALJ Damille determined that Plaintiff can "perform sedentary work as defined in 20 C.F.R. § 404.1567(a),"[5] barring certain limitations (i.e., no concentrated exposure to hazards such as machinery and heights, no extended exposure to extreme temperatures or air pollutants such as fumes and dusts, etc.). (R. 19.) ALJ Damille first considered whether the

---

[5] 20 C.F.R. § 404.1567(a) provides:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

9

evidence in the record demonstrated a medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's symptoms, and then assessed the extent to which the impairment(s) limit Plaintiff's work-related activities. (*Id.*) After taking into account the doctors' diagnoses and notes, ALJ Damille found that although Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 20.) ALJ Damille cited the numerous "unremarkable" and "normal" results in Plaintiff's medical record, and Plaintiff's bilateral knee x-rays showing only "mild to moderate" osteoarthritis. (*Id.*) Further, Plaintiff's impairments are exacerbated by his atrial fibrillation and obesity, the latter of which is partially responsible for Plaintiff's postural limitations and sedentary work restriction. (*Id.*)

ALJ Damille explained how he considered the medical opinions and prior administrative medical findings in making his RFC determination. (*Id.*) He did not find the prior administrative determinations persuasive, largely because the consultants did not physically examine Plaintiff and their conclusion that Plaintiff may perform work at the light exertional level was "inconsistent with the medical evidence of record as a whole." (R. 21.) Thus, ALJ Damille found that his RFC assessment—that Plaintiff may perform sedentary work as defined in 20 C.F.R. § 404.1567(a) due to his arthritis, nerve pain, and atrial fibrillation—more accurately captured the extent of Plaintiff's limitations. (*Id.*) ALJ Damille additionally rejected Plaintiff's allegation of "debilitating symptoms" due to his documented successful treatment regimens, his description of his "daily activities," which did not suggest the level of impairment that Plaintiff had indicated, and the "generally … benign findings" that his physical examinations yielded. (*Id.*)

At step four, ALJ Damille concluded that Plaintiff is able to perform past relevant work as a claims processor, which would not require any activities precluded by Plaintiff's RFC. (*Id.*) The vocational expert testified, and ALJ Damille agreed, that given Plaintiff's limitations, Plaintiff is able to perform his past relevant work "as generally performed." (R. 22.) Thus, the ALJ concluded that Plaintiff was not disabled under the Act during the relevant period. (*Id.*)

### B. Analysis

On appeal, Plaintiff seeks reversal and remand of the Commissioner's decision. (D.E. 8 (Pl.'s Br.) at 23.) Plaintiff claims that the ALJ's RFC determination was not based on substantial evidence and "failed to include significant limitations resulting from all of [Plaintiff's] impairments." (*Id.* at 18.) Specifically, Plaintiff contends that ALJ Damille committed legal error by failing to cite specific evidence in the RFC assessment supporting that Plaintiff's sleep apnea, hypertension, diabetes, diverticulitis, hernia, hearing loss, urinary incontinence, and anxiety are nonsevere, failing to account for Plaintiff's "mild mental limitations" in the RFC, and failing to "acknowledge, discuss, and resolve" Plaintiff's allegations of fecal and urinary incontinence. (*Id.* at 18–22.)

ALJ Damille has the exclusive responsibility of making an RFC determination and examines "all of the relevant medical and other evidence" to do so. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). An ALJ can "accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014). "[T]he ALJ is not required to supply a comprehensive

11

explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

Plaintiff characterizes ALJ Damille's RFC determination as an "incomplete and inaccurate assessment" because it does not discuss Plaintiff's contended sleep apnea, hypertension, diabetes, diverticulitis, hernia, hearing loss, urinary incontinence, and anxiety. (Pl.'s Br. at 18.) Plaintiff mischaracterizes the issue by focusing on the medical impairments themselves rather than the impact that these impairments have on Plaintiff's ability to perform SGA. To the extent that ALJ Damille did not explicitly mention each of Plaintiff's nonsevere impairments, none of them would have materially impacted his final RFC determination. Indeed, ALJ Damille deferred to Plaintiff's own doctors about both the existence *and* severity of his impairments, including each doctor's independent conclusion that Plaintiff's examinations yielded overwhelmingly normal results. (R. 543, 524, 782, 702, 1696, 674, 673, 678.) Plaintiff has the burden of demonstrating, through objective medical evidence, that his limitations significantly limit his ability to do basic work activities. 20 C.F.R. § 404.1521. Absent corroborating medical evidence, Plaintiff's claims of severe pain alone are insufficient. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) (holding that plaintiff's testimony, which had no basis in the record, was insufficient to support a finding of functional limitations). This Court agrees with the ALJ that "[n]othing in [Plaintiff's] clinical signs suggests that the residual functional capacity assessment is unreasonable." (R. 21.)

This Court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, Civ. No. 16-1768, 2018 WL 4189661, at *3 (M.D. Pa. Apr. 13, 2018). Here, the ALJ reviewed all of the relevant evidence including the medical records, medical opinions, and Plaintiff's own

description of his limitations. He relied on the evidence submitted in reaching his determination that Plaintiff could perform sedentary work as defined in 20 C.F.R. § 404.1567(a), and this determination was accompanied by a thorough explanation and meaningful discussion of the evidence. Indeed, the ALJ explained:

> There are several reasons why the claimant's allegations of debilitating symptoms are not entirely consistent with the evidence. First, although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. Second, the claimant described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Third, despite allegations of debilitating limitations, physical examinations, as mentioned above, generally indicated benign findings. For these reasons, the claimant's allegations concerning the severity of his symptoms are not entirely consistent with the evidence, and any limitations imposed by the claimant's impairments are accounted for sufficiently in the residual functional capacity.

(R. 21.) This Court finds that the ALJ's conclusions are substantially supported by the evidence. *See Zaborowski*, 115 F.4th at 639. In assessing Plaintiff's RFC, ALJ Damille provided a sufficient narrative discussion of Plaintiff's longitudinal medical record which considered the medical evidence therein and explained how he came to the conclusion that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but that Plaintiff's claims about their "intensity, persistence and limiting effects … are not entirely consistent with the medical evidence." (R. 20.)

### 1. Mental Limitations

Plaintiff argues that although ALJ Damille found "mild mental functional limitations," he did not consider these limitations in his RFC determination. (Pl's. Br. at 20.) First, courts have repeatedly held that "an RFC assessment does not need to contain in-depth analysis on mental impairments when the ALJ finds earlier in his opinion that a claimant's mental impairments are no greater than mild." *D.C. v. Comm'r of Soc. Sec.*, Civ. No. 20-2484, 2021 WL 1851830, at *6

(D.N.J. May 10, 2021); *see also Chandler v. Berryhill*, Civ. No. 16-4516, 2018 WL 3575258, at *5–6 (E.D. Pa. July 24, 2018) (holding that ALJ did not err by failing to include plaintiff's mild mental impairments in RFC); *Makowski v. Comm'r of Soc. Sec.*, Civ. No. 16-1656, 2017 WL 3151243, at *7 (D.N.J. July 24, 2017) (explaining that omitting plaintiff's mild mental impairments at RFC stage was not reversible error because plaintiff's daily activities undermined her assertions of being severely impaired).

In addition, ALJ Damille clearly and carefully addressed the extent and nature of Plaintiff's mental limitations. (R. 17–18.) ALJ Damille included the opinion of Dr. Friedman, the psychological consultative examiner, who "opined that while [Plaintiff] showed generalized anxiety disorder, there were no limitations." (R. 17, 674.) At the RFC stage of his analysis, ALJ Damille incorporated his earlier finding that Plaintiff's daily activities are largely unaffected by his claims of impairment, which informed his ultimate conclusion that Plaintiff "can sustain a greater capacity of … mental work-related activity than he described." (R. 21.) Furthermore, the record indicates that a variety of Plaintiff's providers concluded that Plaintiff's numerous mental status examinations yielded normal results; Plaintiff himself testified that he has no difficulty following spoken instructions, getting along with authority figures, or dealing with stress and changes in routine; Plaintiff has not been referred to a mental health provider, nor has he independently sought treatment for his anxiety. (*See, e.g.*, R. 17–21, 524, 538, 543, 702, 1611–12, 1616–17.) This Court is satisfied that ALJ Damille's conclusion that Plaintiff's anxiety does not preclude him from performing sedentary work is supported by substantial evidence.

### 2. Urinary and Fecal Incontinence

Plaintiff additionally argues that ALJ Damille failed to address Plaintiff's history of "urinary incontinence and fecal incontinence." (Pl.'s Br. at 21.) Plaintiff relies solely on his own

testimony in asserting that he suffered from incontinence. (*Id.* at 21–22; R. 55.) But, as provided above, Plaintiff's statements alone are insufficient to establish a functional limitation. 20 C.F.R. § 404.1529(a). ALJ Damille correctly limited his analysis to Plaintiff's medical conditions substantiated by objective evidence.

Urinary incontinence was among those medical conditions, but ALJ Damille considered it at multiple stages of his analysis and ultimately concluded it was nonsevere and responsive to medical treatment. (R. 17.) ALJ Damille considered Plaintiff's urinary incontinence, along with his other impairments documented in the record, in making his final RFC assessment, (R. 21), and this Court is persuaded that the RFC accurately and fairly describes Plaintiff's ability to perform SGA.

## **CONCLUSION**

For the foregoing reasons, this Court finds that the ALJ's factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct. The Commissioner's decision is therefore **AFFIRMED**. An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties